IN the MATTER OF J.G., Appellant

NO. 01–15–01025–CV

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued May 5, 2016

Cheri Duncan, Assistant Public Defender, Houston, TX, for Appellant.

Devon Anderson, District Attorney, Eric Kugler, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice Radack and Justices Keyes and Higley.

## OPINION

Evelyn V. Keyes, Justice

In this accelerated appeal, after the State alleged that appellant, J.G., who was sixteen years old at the time, had engaged in delinquent conduct, the trial court waived its jurisdiction and certified appellant to stand trial as an adult. Appellant pleaded guilty to the offense of aggravated robbery in the criminal district court, but the Fourteenth Court of Appeals held that the juvenile court abused its discretion in waiving jurisdiction and reversed appellant's conviction. *See [J.G.] v. State*, 471 S.W.3d 1 (Tex.App.–Houston [14th Dist.] 2014, no pet.) ("*J.G. I.*"). On remand, the juvenile court again waived its jurisdiction and certified appellant, who was now over the age of eighteen, as an adult. In two issues, appellant contends that (1) Family Code section 54.02(j), which applies to a juvenile defendant who is over the age of eighteen and allows the juvenile court to waive its jurisdiction and certify the defendant as an adult, is unconstitutional as applied to him, when he had the court's previous waiver of jurisdiction reversed on appeal; and (2) the juvenile court abused its discretion when it waived jurisdiction over him.

We affirm.

## Background

On January 17, 2012, the State filed a petition in the juvenile court alleging that appellant had engaged in delinquent conduct by committing aggravated robbery. Appellant was sixteen at the time the State filed its petition. On May 11, 2012, the State filed an amended petition, which also requested that the juvenile court waive its exclusive original jurisdiction and transfer appellant to the criminal district court for further proceedings. On the same date, the State filed a separate motion to waive jurisdiction, arguing that because of the seriousness of the offense, "the welfare of the community requires criminal proceedings and it is in the best interest of the State of Texas" and appellant that the juvenile court waive its exclusive jurisdiction.

In advance of the certification hearing, the trial court had prepared a "return to court summary," which summarized the facts of the charged offense, appellant's behavior while in custody for the charged offense, his prior encounters with the juvenile court system, his behavior while on probation for prior offenses, and his educational history. The trial court also ordered a psychiatric evaluation, which was conducted in the presence of appellant's attorney approximately one month before the certification hearing, and an evaluation of his intellectual functioning. The latter evaluation specifically addressed factors relevant to the juvenile court's decision concerning certification, including the seriousness of the crime, appellant's level of sophistication and maturity, prior rehabilitation efforts, and risk of violence. The evaluator recommended that "[d]ue to [the] seriousness of the nature of his alleged offenses, if adjudicated, [appellant] will likely benefit from a highly structured environment that is instrumental in helping him regulate his involvement in

negative activities," that appellant "would benefit from intensive substance abuse treatment," and that appellant "would benefit from participation in an independent living program and could benefit from training in a service trade."

On July 18, 2012, less than one month after appellant turned seventeen, the juvenile court held a certification hearing. The order waiving jurisdiction specifically stated that after a "full investigation and hearing," the court found that appellant

is charged with a violation of a penal law of the grade of felony, if committed by an adult, to wit: *AGGRAVATED ROBBERY* committed on or about the *11th* day of *JANUARY, 2012* : that there has been no adjudication of THIS OFFENSE; that he was 14 years of age or older at the time of the commission of the alleged OFFENSE ...; that there is probable cause to believe that the child committed the OFFENSE alleged and that because of the seriousness of the OFFENSE, the welfare of the community requires [a] criminal proceeding. In making that determination, the Court has considered among other matters:

1. Whether the alleged OFFENSE WAS against [a] person or property, with the greater weight in favor of waiver given to offenses against the person;

2. The sophistication and maturity of the child;

3. The record and previous history of the child; and

4. The prospects of adequate protection of the public and the likelihood of reasonable rehabilitation of the child by use of procedures, services and facilities currently available to the Juvenile Court.

The Court specifically finds that the said [appellant] is of sufficient sophistication and maturity to have intelligently, knowingly and voluntarily waived all constitutional rights heretofore waived by the said [appellant], to have aided in the preparation of HIS defense and to be responsible for HIS conduct; that the OFFENSE allege[d] to have been committed WAS against the person of another; and the evidence and reports heretofore presented to the court demonstrate to the court that there is little, if any, prospect of adequate protection of the public and likelihood of reasonable rehabilitation of the said [appellant] by use of procedures, services, and facilities currently available to the Juvenile Court.

The juvenile court thus waived its original jurisdiction and ordered appellant transferred to Harris County criminal district court.

Upon being transferred to the criminal district court, appellant pleaded guilty to the charged offense of aggravated robbery. Appellant appealed his conviction to the Fourteenth Court of Appeals.[1] On appeal, appellant argued that the juvenile court abused its discretion when it waived jurisdiction over him, that the evidence was insufficient to support a waiver of jurisdiction, and that the juvenile court erred by

---

1. From January 1, 1996, to September 1, 2015, Code of Criminal Procedure article 44.47 was in effect and provided that a juvenile defendant could appeal an order from the juvenile court waiving jurisdiction and transferring him to district court, but only in conjunction with the appeal of a final judgment of conviction in the district court. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 85, 1995 Tex. Gen. Laws 2517, 2584. Effective September 1, 2015, Texas Family Code section 56.01(c) applies and permits the juvenile to immediately appeal a transfer order. *See* Tex. Fam. Code Ann. § 56.01(c)(1)(A) (Vernon Supp.2015).

not including specific evidentiary findings supporting its determination in the order waiving jurisdiction. *See J.G. I,* 471 S.W.3d at 4.

The Fourteenth Court of Appeals relied upon a recent Court of Criminal Appeals decision, *Moon v. State,* 451 S.W.3d 28 (Tex.Crim.App.2014), in holding that the juvenile court, in an order waiving its original jurisdiction, must state both the reasons for waiving its jurisdiction and the findings of fact that support those reasons. *J.G. I,* 471 S.W.3d at 4. The court noted that the transfer order in this case made "no findings about the specifics of the alleged offense" and found "no more than probable cause to believe that appellant committed 'the OFFENSE alleged.'" *Id.* The court also noted that "the only stated reason given for appellant's transfer was that 'because of the seriousness of the OFFENSE, the welfare of the community requires criminal proceeding[s,]' and the only specific fact supporting this reason was that 'the OFFENSE allege[d] to have been committed WAS against the person of another[.]'" *Id.* Our sister court thus concluded that "the juvenile court's waiver of jurisdiction 'based on this particular reason fortified only by this fact' constitutes an abuse of discretion." *Id.* The court determined that the criminal district court never acquired jurisdiction over appellant, vacated the judgment of conviction, dismissed the case against appellant in the district court, and remanded the case to the juvenile court "for further proceedings." *Id.*

After the Fourteenth Court of Appeals remanded the case to the juvenile court, the State filed an amended petition against appellant on March 20, 2015. At that point, appellant was nineteen years old. The State again sought certification of appellant as an adult, and the juvenile court ordered a new round of psychological and intellectual evaluations of appellant.

The juvenile court held a certification hearing on November 2, 2015. At this hearing, Houston Police Department Officer C. Elder testified concerning the facts of the underlying aggravated robbery offense. Officer Elder testified that he was on patrol around 10:30 p.m. on January 11, 2012, in southwest Houston when he received a dispatch concerning a robbery. Officer Elder drove to a nearby apartment complex and spoke with Antonio Duran, the complainant, who informed him that he arrived at the complex and honked his horn at a car that was blocking the gate into the complex. The other car allowed Duran to pass through the gate, and after he did he parked in a parking space. As he started walking to an apartment, appellant walked up to him with another man who pointed a gun in Duran's face and demanded his money and any property he had with him. Appellant and the other man then drove away in their own vehicle.

Duran gave Officer Elder a description of the vehicle, and, after Elder gave that information to the dispatcher, another officer, Officer Gerard, observed the vehicle at the scene of a second robbery. Appellant and his companion fled the scene of the second robbery, but they crashed at a nearby apartment complex. Officer Elder discovered Duran's property in the car that appellant was driving, and Duran arrived at the scene of the crash and gave a positive identification of appellant as one of the men who had robbed him. Officers recovered a pistol from appellant's companion, who was twenty years old at the time of the offense and was therefore tried in criminal district court.

At the hearing, appellant raised several objections to the juvenile court's proceeding with a certification decision. Appellant argued that re-certification was not

proper because, under Family Code section 54.02(j), which applies to certification decisions made after the individual turns eighteen, the State could not prove that there was no prior adjudication of the offense. Appellant also argued that the State could not prove that it had exercised due diligence to obtain an adjudication of the offense in the juvenile court before he turned eighteen. Appellant further argued that the State could not prove that probable cause existed that appellant himself committed the offense because the evidence reflected that appellant was a party to the offense of aggravated robbery, and the State could not seek certification based on the defendant's "participation as a party because there's a difference between criminal culpability for a party and commission of an offense." Appellant also argued that allowing the State to seek recertification under section 54.02(j), instead of section 54.02(a), which applies to certification decisions before the individual turns eighteen, and which was the subsection used to certify appellant the first time, violated the double-jeopardy clause.

The juvenile court found that appellant was over the age of eighteen; that he was at least ten years of age and younger than seventeen at the time of the alleged offense; that no adjudication concerning the offense had been made and no adjudication hearing concerning the offense had been conducted; that a preponderance of the evidence showed that despite due diligence by the State, it was not practicable to proceed in the juvenile court before appellant's eighteenth birthday because a previous transfer order, pending when appellant turned eighteen, had been reversed by an appellate court after appellant's eighteenth birthday; and probable cause existed to believe that appellant committed the alleged offense. The juvenile court incorporated by reference extensive findings of fact and conclusions of law concerning what the court specifically considered when making its certification determination. The juvenile court ultimately waived original jurisdiction and recertified appellant to stand trial as an adult.

This accelerated appeal followed. *See* Tex. Fam.Code Ann. § 56.01(c)(1)(A), (h) (Vernon Supp.2015) (providing right to immediate appeal from order "respecting transfer of the child for prosecution as an adult" and providing that appeal from such order "has precedence over all other cases").

## Juvenile Certification

The Juvenile Justice Code governs proceedings in all cases involving the delinquent conduct of a person who was a child at the time they engaged in the conduct. Tex. Fam.Code Ann. § 51.04(a) (Vernon Supp.2015); *id.* § 51.02(2)(A) (Vernon Supp.2015) (defining "child" as a person who is "ten years of age or older and under 17 years of age"). The juvenile court has exclusive original jurisdiction over all proceedings governed by the Juvenile Justice Code. *Id.* § 51.04(a). Family Code section 54.02 provides that the juvenile court may waive its exclusive jurisdiction and transfer a child to the appropriate district court for criminal proceedings if:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

 (A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is ... a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; [and]

 ....

(3) after a full investigation and a hearing, the juvenile court determines

that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

Tex. Fam.Code Ann. § 54.02(a) (Vernon 2014); *see Moore v. State,* 446 S.W.3d 47, 52 (Tex.App.–Houston [1st Dist.] 2014, pet. granted) (holding that section 54.02(a) applies to one who is "child" at time of transfer and section 51.02(2) defines "child" as person who is "ten years of age or older and under 17 years of age"). The State bears the burden to produce evidence that the waiver of jurisdiction is appropriate. *Moon,* 451 S.W.3d at 40. Before holding the transfer hearing, the juvenile court shall order and obtain a diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense. Tex. Fam.Code Ann. § 54.02(d).

■ A transfer hearing is not held for the purpose of determining guilt or innocence, but is instead held for "the purpose of establishing whether the child's and society's best interest are met by maintaining juvenile custody of the child or by transferring the child to district court for adult proceedings." *In re A.A.,* 929 S.W.2d 649, 653 (Tex.App.–San Antonio 1996, no pet.). In making its determination concerning transfer, the juvenile court shall consider, among other matters:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

Tex. Fam.Code Ann. § 54.02(f). If the juvenile court waives jurisdiction, "it shall state specifically in the order its reasons for waiver...." *Id.* § 54.02(h).

■ Juvenile courts are courts of limited jurisdiction, and, generally, maintain jurisdiction over a child who has turned eighteen only to transfer the case to the criminal district court pursuant to section 54.02(j) or dismiss the case. *In re N.J.A.,* 997 S.W.2d 554, 556 (Tex.1999); *In re B.R.H.,* 426 S.W.3d 163, 166 (Tex.App.–Houston [1st Dist.] 2012, orig. proceeding). The Juvenile Justice Code, however, provides statutory exceptions to this general rule. The juvenile court retains jurisdiction over a person, without regard to that person's age, for conduct engaged in by the person prior to turning seventeen if, as a result of an appeal by the person of the juvenile court's transfer order, the order is reversed and the case remanded to the juvenile court by the appellate court. Tex. Fam.Code Ann. § 51.041(a) (Vernon Supp. 2015). The juvenile court also retains jurisdiction over a person, without regard to that person's age, who is a respondent in a proceeding for waiver of jurisdiction and transfer to the district court under section 54.02(a) if: (1) the transfer motion was filed while the respondent was younger than eighteen or nineteen years of age; (2) the proceeding is not complete before the respondent becomes eighteen or nineteen years of age; and (3) the juvenile court enters a finding that the prosecuting attorney exercised due diligence in an attempt to complete the proceeding before the respondent turned eighteen or nineteen. *Id.* § 51.0412 (Vernon 2014); *In re B.R.H.,*

426 S.W.3d at 166–67. A child who objects to the jurisdiction of the juvenile court must raise the objection at the discretionary transfer hearing. TEX. FAM.CODE ANN. § 51.042(a) (Vernon 2014).

Section 54.02(j) concerns waiver of jurisdiction when the person before the court is over the age of eighteen. *See id.* § 54.02(j). This subsection provides that the juvenile court may waive its original jurisdiction and transfer a person to the appropriate district court if:

(1) the person is 18 years of age or older;

(2) the person was:

. . . .

(B) 14 years of age or older and under 17 years of age at the time the person is alleged to have committed . . . a felony of the first degree other than an offense under Section 19.02, Penal Code;

. . . .

(3) no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted;

(4) the juvenile court finds from a preponderance of the evidence that:

(A) for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person; or

(B) after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:

(i) the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person;

(ii) the person could not be found; or

(iii) a previous transfer order was reversed by an appellate court or set aside by a district court; and

(5) the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged.

*Id.*

 The State bears the burden of demonstrating that proceeding in the juvenile court was not practicable because of circumstances outside the control of the State. *Moore,* 446 S.W.3d at 51. The State is not required to establish the guilt of the child, but instead is only required to "present evidence which will allow the juvenile court to exercise its sound discretion in making [a] transfer to [the] district court for criminal proceedings." *In re A.A.,* 929 S.W.2d at 653.

### Constitutionality of Section 54.02(j)

In his first issue, appellant challenges the constitutionality of Family Code section 54.02(j), the section on which the juvenile court based its waiver of its jurisdiction, as applied to him. Appellant argues that the application of the statute in his case violates the double jeopardy clause, the due process clause, the equal protection clause, and the cruel and unusual punishment clause and that the statute is an unconstitutional ex post facto law.

 There are two types of challenges to the constitutionality of a statute: the statute is unconstitutional as applied to the defendant, or the statute is unconstitutional on its face. *Fluellen v. State,* 104 S.W.3d 152, 167 (Tex.App.–Texarkana 2003, no pet.). Statutes are presumed to be constitutional until it is determined otherwise. *Karenev v. State,* 281 S.W.3d 428, 434 (Tex.Crim.App.2009). A litigant who challenges the constitutionality of a statute

has the burden of rebutting the presumption of constitutionality. *State v. Rosseau,* 398 S.W.3d 769, 778 (Tex.App.–San Antonio 2011), *aff'd,* 396 S.W.3d 550 (Tex.Crim. App.2013). In the absence of contrary evidence, we presume that the legislature acted in a constitutionally sound fashion, and we uphold the statute if we can ascertain a reasonable construction that will render the statute constitutional and will carry out the legislative intent. *Lawson v. State,* 283 S.W.3d 438, 440 (Tex.App.–Fort Worth 2009, pet. ref'd).

### A. Double Jeopardy

■■■■ The Fifth Amendment to the United States Constitution provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see also* Tex. Const. art. I, § 14 ("No person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction."); *Ex parte Mitchell,* 977 S.W.2d 575, 580 (Tex. Crim.App.1997) ("We have consistently held, however, that the Texas and United States constitutions' double jeopardy provisions provide substantially identical protections."). The Double Jeopardy Clause protects a defendant from three things: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Ex parte Milner,* 394 S.W.3d 502, 506 (Tex.Crim.App.2013) (citing *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977)). Although the Double Jeopardy Clause precludes retrial of a defendant whose conviction is reversed on appeal on the basis of insufficient evidence, it does not preclude retrial when the defendant's conviction is reversed on appeal for trial error. *See Lock-*

*hart v. Nelson,* 488 U.S. 33, 39, 109 S.Ct. 285, 290, 102 L.Ed.2d 265 (1988).

Here, appellant argues that double jeopardy bars recertification in this case because, in *J.G. I,* the Fourteenth Court of Appeals determined that insufficient evidence supported the juvenile court's decision to waive jurisdiction and transfer his case to the district court. We conclude, however, that this is a mischaracterization of *J.G. I.* Although appellant is correct that the Fourteenth Court determined that the juvenile court erroneously certified him as an adult, it did not reach the question of whether insufficient evidence supported the juvenile court's decision. Instead, our sister court based its opinion on the fact that, under the Court of Criminal Appeals' decision in *Moon,* the transfer order was facially defective because it did not make any specific findings about the seriousness of appellant's alleged offense and did not support its ultimate conclusion that transfer was warranted with any facts found in the record. *See J.G. I,* 471 S.W.3d at 4. The court concluded that "the juvenile court's waiver of jurisdiction 'based on this particular reason fortified only by this fact' constitutes an abuse of discretion." *Id.* (quoting *Moon,* 451 S.W.3d at 50). The Fourteenth Court thus held that the transfer order itself was defective; it did not hold that the trial court's decision to waive jurisdiction and transfer appellant's case was not supported by sufficient evidence. *See id.*

We therefore conclude that, because appellant's prior conviction for the charged offense in this case was reversed due to trial error, and not due to insufficient evidence, double jeopardy does not preclude the juvenile court from waiving its jurisdiction, certifying appellant as an adult, and transferring the case to district court a

second time.[2] *See Lockhart*, 488 U.S. at 39, 109 S.Ct. at 290.

### B. Ex Post Facto Law

Both the United States and Texas Constitutions contain prohibitions on enacting ex post facto laws. U.S. CONST. art. I, § 10, cl. 1; TEX. CONST. art. I, § 16. An ex post facto law: (1) punishes as a crime an act previously committed which was innocent when done; (2) changes the punishment and inflicts a greater punishment than the law attached to the criminal offense when committed; or (3) deprives a person charged with a crime of any defense available at the time the act was committed. *Rodriguez v. State*, 93 S.W.3d 60, 66 (Tex.Crim.App. 2002). A law is also an impermissible ex post facto law if it "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender." *Carmell v. Texas*, 529 U.S. 513, 530, 120 S.Ct. 1620, 1631, 146 L.Ed.2d 577 (2000).

Appellant argues that section 54.02(j), as applied in this case, "changes the rules after the fact in a way that materially changes the state's substantive burden to certify and then convict the child, and subjects the child to adult criminal penalties to which he would not have been subject under the applicable law when the alleged crime was committed." Section 54.02(j),

however does not fit within any of the enumerated categories of ex post facto laws. It does not punish an act that was innocent when appellant committed it; it does not change the punishment and inflict a greater punishment than existed when appellant committed the criminal act, as he was always subject to the possibility of the trial court waiving its jurisdiction and transferring his case to the criminal district court, which would then impose an "adult" sentencing range; it does not deprive appellant of a defense that was available at the time he committed the alleged criminal act; and, while section 54.02(j) does involve the consideration of different statutory factors from section 54.02(a), and thus requires the consideration of different evidence when making the transfer decision, the decision to transfer appellant to the district court is not an adjudication or a "conviction" of the alleged offense. *See Carmell*, 529 U.S. at 530, 120 S.Ct. at 1631; *Rodriguez*, 93 S.W.3d at 66; *see also In re D.M.*, 611 S.W.2d 880, 883 (Tex.Civ.App.–Amarillo 1980, no writ) (holding that transfer proceeding in juvenile court is not adjudicatory hearing to determine whether defendant committed alleged offense, but is instead hearing to determine whether defendant should remain in juvenile court system or be transferred to adult system "for criminal proceedings").

We conclude that section 54.02(j) is not itself an unconstitutional ex post facto law.

---

**2.** As the State points out, the Court of Criminal Appeals in *Moon*, upholding this Court's decision to reverse the juvenile court's transfer order, based on, among other things, failure to include specific fact findings supporting its decision to waive jurisdiction, indicated in dicta that, on remand, the juvenile court retained the ability to make a second certification decision based on Family Code section 54.02(j). The Court of Criminal Appeals stated:

The question nevertheless ineluctably presents itself: Pending for what? We leave

that question for the juvenile court, but we do note that at least one legislatively provided alternative would seem to be for the juvenile court to conduct a new transfer hearing and enter another order transferring the appellant to the jurisdiction of the criminal court, assuming that the State can satisfy the criteria under Section 54.02(j) of the Juvenile Justice Code.

*Moon v. State*, 451 S.W.3d 28, 52 n. 90 (Tex. Crim.App.2014).

Nor is it applied unconstitutionally in this case.

## C. Due Process and Equal Protection

 Appellant argues that recertification in this case under section 54.02(j) denies him due process because he "lost the protection of the equitable factors in Section 54.02(f)" that must be considered when the trial court certifies a juvenile respondent who has not yet turned eighteen under section 54.02(a), and he was instead certified a second time under "an entirely new set of standards." Appellant also argues that application of section 54.02(j) to him violates his equal protection rights because this subsection "does not apply to a juvenile who is certified at a younger age and has time to obtain a reversal of his original certification and return to juvenile court before age 18" and still have the subsection 54.02(a) and (f) factors applied to him.

 The United States Supreme Court has held that "the waiver of [juvenile court] jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." *Kent v. United States,* 383 U.S. 541, 556, 86 S.Ct. 1045, 1055, 16 L.Ed.2d 84 (1966). Due process requires, as a condition to a valid waiver order, "a hearing, including access by [the juvenile's] counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's [transfer] decision." *Id.* at 557, 86 S.Ct. at 1055. The Supreme Court held that juvenile courts must "accompany [their] waiver order[s] with a statement of the reasons or considerations therefor" and that transfer hearings must "measure up to the essentials of due process and fair treatment." *Id.* at 561–62, 86 S.Ct. at 1057.

Under Texas's statutory scheme, the juvenile court may waive its exclusive jurisdiction and transfer a child to the district court for criminal proceedings under section 54.02(a) if the child is fourteen years of age or older at the time he is alleged to have committed a first-degree felony offense. *See* TEX. FAM.CODE ANN. § 54.02(a)(2)(A); *see also id.* § 51.02(2) (defining "child" as "a person who is ... ten years of age or older and under 17 years of age"). To certify the juvenile as an adult under this section, the juvenile court must determine that there is probable cause to believe that the child committed the alleged offense and that, because of the seriousness of the offense or the background of the child, the welfare of the community requires criminal proceedings. *Id.* § 54.02(a)(3). Prior to the transfer hearing, the juvenile court must order and obtain a complete diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense. *Id.* § 54.02(d). The juvenile court must also consider the four factors enumerated by section 54.02(f): (1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person; (2) the sophistication and maturity of the child; (3) the record and previous history of the child; and (4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court. *Id.* § 54.02(f). The juvenile court, in its transfer order, must make specific findings of fact regarding each of the section 54.02(f) factors. *See Moon,* 451 S.W.3d at 47.

If the person has turned eighteen, the juvenile court must determine whether to certify him as an adult under section 54.02(j). Under that subsection, the juve-

nile court must consider whether the person was between fourteen and seventeen years of age at the time he was alleged to have committed a first-degree felony, whether an adjudication concerning the alleged offense has been made or an adjudication hearing conducted, whether it was not practicable to proceed in juvenile court before the person's eighteenth birthday, and whether probable cause exists to believe the person committed the alleged offense. *See id.* § 54.02(j). A juvenile court conducting a transfer proceeding under subsection 54.02(j) is not required to conduct the diagnostic study, social evaluation, or full investigation of the child and his circumstances that subsection 54.02(d) requires for proceedings under subsection 54.02(a). *See id.* § 54.02(*l*).

Here, it is undisputed that when the juvenile court initially waived jurisdiction and transferred appellant's case, it did so pursuant to section 54.02(a), as appellant was seventeen at the time. When the court waived jurisdiction and transferred the case the second time following remand from the Fourteenth Court of Appeals, it did so pursuant to section 54.02(j), as appellant was twenty at the time of the second transfer hearing. In its second order waiving jurisdiction, in addition to making specific findings on each of the section 54.02(j) factors, the juvenile court also incorporated by reference extensive findings of fact and conclusions of law. These findings and conclusions not only contained facts supporting the section 54.02(j) factors, they also addressed the factors enumerated by section 54.02(a) and section 54.02(f), even though the court did not waive its jurisdiction under those subsections.

In the findings and conclusions, the juvenile court made findings that appellant committed an offense against the person of another, and the court found it compelling that appellant "and his co-actor placed the Complainant in fear of death or serious bodily injury with their actions in this offense." The juvenile court ordered a new round of psychological evaluations following remand of the case, and it found that it could not "adequately measure[ ]" appellant's "true and accurate level of intellectual based sophistication" because appellant is bilingual and the examiner had difficulties scoring appellant's answers on the Spanish version of one of the intellectual tests administered. The juvenile court also recited appellant's extensive history with the juvenile justice system prior to the offense at issue, which included a pattern of offenses escalating in seriousness to the alleged offense of aggravated robbery, and his numerous prior placements with rehabilitation programs offered by the juvenile system. The juvenile court found that appellant "previously exhibited a failure to engage in rehabilitation while under this court's supervision." The juvenile court also made findings concerning each of the statutory factors relevant to the decision to waive jurisdiction under section 54.02(j).

Even though the text of section 54.02(j) does not mandate consideration of the relevant factors under subsections (a) and (f), required to be considered for juveniles who have not yet turned eighteen, the record is clear that, in making its transfer decision following remand, the juvenile court considered the subsection (a) and (f) factors as they applied to appellant's particular case. In this case, therefore, the juvenile court essentially considered *all* of the relevant statutory factors for waiver of jurisdiction that the Legislature has specifically enumerated in section 54.02, despite the age-based distinction between subsections (a) and (f) and subsection (j). We therefore conclude that section 54.02(j), as applied to appellant in this case, did not

deprive appellant of due process and equal protection.

## D. Cruel and Unusual Punishment

■ Appellant argues that section 54.02(j) violates the Eighth Amendment's prohibition against cruel and unusual punishment because it "deprived him of his liberty interest in being treated differently [from adult offenders] when he was a child and gave the juvenile court on remand no opportunity to weigh the purposes of punishment when that court had to decide whether to transfer him a second time to adult court."

■ The Eighth Amendment provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. "Protection against disproportionate punishment is the central substantive guarantee of the Eighth Amendment and goes far beyond the manner of determining a defendant's sentence." *Montgomery v. Louisiana*, —— U.S. ——, 136 S.Ct. 718, 732–33, 193 L.Ed.2d 599 (2016). The United States Supreme Court has noted that "children are constitutionally different from adults for purposes of sentencing" and, accordingly, has held, among other things, that the assessment of the death penalty and mandatory life sentences without parole against juveniles violates the Eighth Amendment. *See id.* (quoting *Miller v. Alabama*, —— U.S. ——, 132 S.Ct. 2455, 2464, 183 L.Ed.2d 407 (2012)). The Court noted that due to "children's diminished culpability and heightened capacity for change," the retributive and rehabilitative purposes of the criminal justice system ought to be weighed differently for juvenile offenders as opposed to adult offenders. *Id.*

Appellant argues that section 54.02(j) does not allow the juvenile court to consider the juvenile's greater need for rehabilitation and the lesser weight placed on retribution when making a transfer decision. However, as we have detailed above, in making its decision to waive jurisdiction a second time and transfer appellant's case to the district court, the juvenile court in this case clearly considered appellant's prior history with the juvenile justice system, the rehabilitative placements that were made, his lack of cooperation with those rehabilitative goals, and the escalation of his criminal conduct. We cannot conclude that, as applied to this case, section 54.02(j) constitutes cruel and unusual punishment violating the Eighth Amendment.

We overrule appellant's first issue.

## Trial Court's Decision to Waive Jurisdiction

■ In his second issue, appellant contends that the juvenile court abused its discretion when it waived jurisdiction and transferred the case to the district court because the State presented insufficient evidence to support the required statutory factors for transferring the case of an individual over eighteen years old. Specifically, appellant contends that the State did not provide sufficient evidence that (1) after due diligence, it was not practicable to proceed in juvenile court before appellant's eighteenth birthday because the previous transfer order was reversed; (2) no adjudication of the alleged offense had been made; and (3) probable cause existed that appellant "committed" the alleged offense, because the evidence established that, at most, appellant was a party to the offense and not the principal actor.

We review the trial court's specific findings of fact concerning a transfer decision under traditional sufficiency of evidence principles. *Moon*, 451 S.W.3d at 47; *Faisst v. State*, 105 S.W.3d 8, 12 (Tex. App.–Tyler 2003, no pet.) ("The juvenile court's findings of fact are reviewable by the same standards as are applied in re-

viewing the legal or factual sufficiency of the evidence supporting a jury's answers to a charge."). Under a legal sufficiency challenge, we credit evidence favorable to the challenged finding and disregard contrary evidence unless a reasonable fact finder could not reject the evidence. *Moon v. State*, 410 S.W.3d 366, 371 (Tex. App.–Houston [1st Dist.] 2013), *aff'd*, 451 S.W.3d 28 (Tex.Crim.App.2014). We will not second-guess the fact finder "unless only one inference can be drawn from the evidence." *Faisst*, 105 S.W.3d at 12. If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *Moon*, 410 S.W.3d at 371. Under a factual sufficiency challenge, we consider all of the evidence presented to determine if the court's findings are against the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *Id.*

We review the juvenile court's ultimate decision to waive jurisdiction for an abuse of discretion. *Moon*, 451 S.W.3d at 47; *Faisst*, 105 S.W.3d at 12 ("Absent an abuse of discretion, we will not disturb a juvenile court's findings."). In doing so, we ask whether the juvenile court's transfer decision was "essentially arbitrary, given the evidence upon which it was based, or [whether] it represent[ed] a reasonably principled application of the legislative criteria." *Moon*, 451 S.W.3d at 47.

## A. State's Exercise of Due Diligence Before Appellant's 18th Birthday

 Section 54.02(j) provides that a juvenile court may waive jurisdiction and transfer the proceeding to the criminal district court if, among other things:

(4) the juvenile court finds from a preponderance of the evidence that:

 (A) for a reason beyond the control of the state it was not practicable to proceed in juvenile court before

the 18th birthday of the person; or

 (B) after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:

 (i) the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person;

 (ii) the person could not be found; or

 (iii) a previous transfer order was reversed by an appellate court or set aside by a district court.

TEX. FAM.CODE ANN. § 54.02(j)(4). This case concerns the last scenario contemplated by section 54.02(j)(4). Although the Juvenile Justice Code does not specifically define "due diligence," the phrase has been defined in other contexts. *In re B.R.H.*, 426 S.W.3d at 168. "Due diligence requires the State to 'move ahead' or 'reasonably explain delays.'" *Id.* It does not require the State "to 'do everything perceivable and conceivable to avoid delay.'" *Id.* (quoting *In re N.M.P.*, 969 S.W.2d 95, 100 (Tex.App.–Amarillo 1998, no pet.)). Diligence is usually a fact question that the trial court determines in light of the circumstances of each case. *Id.*

Here, the record reflects that the alleged offense occurred on January 11, 2012. Appellant was sixteen years old at the time. Six days later, the State filed its petition in the juvenile court alleging that appellant had engaged in delinquent conduct. Four months later, on May 11, 2012, while appellant was still sixteen years old, the State sought initial certification of appellant as an adult. On July 18, 2012, less than a month after appellant turned seventeen, the trial court issued its order waiving jurisdiction and transferring appellant's case to the district court. At the

time, appellant could not immediately appeal this decision, and thus he had to wait to seek appellate review until after he had pleaded guilty in the district court and that court had rendered a judgment of conviction. Appellant turned eighteen in June 2013. On December 23, 2014, the Fourteenth Court of Appeals reversed his conviction on the basis of a defective transfer order and remanded the case to the juvenile court. Appellant was nineteen years old at that time. The Fourteenth Court's mandate issued on March 20, 2015, and the State immediately filed its amended petition seeking to re-certify appellant as an adult. By the time the juvenile court held the second transfer hearing on November 2, 2015, appellant had turned twenty years old.

The record thus reflects that the only delay attributable to the State was the nearly four-month period of time between the State's filing of the initial delinquent conduct petition in January 2012 and it's filing of the motion to transfer in May 2012. Appellant has cited to no authority holding that this is an unreasonable delay, and, in fact, case law holds otherwise. *See In re B.R.H.*, 426 S.W.3d at 168 (holding that some evidence supported trial court's finding that State used due diligence in prosecuting its case when State delayed five months after alleged offense in bringing charges against defendant and additional two-month delay before the transfer hearing also occurred).

Appellant argues that the State should be precluded from seeking recertification under section 54.02(j) because, by seeking certification at the outset of its case, instead of foregoing the transfer process and proceeding solely in the juvenile court, the State cannot establish that it used diligence in attempting to proceeding in the juvenile court before appellant's eighteenth birthday. Essentially, appellant argues that because the State made the decision to seek certification, which ultimately led to the reversal of the trial court's transfer order on appeal, the state cannot establish this prong of section 54.02(j). We disagree.

The language of section 54.02(j)(4)(B)(iii) contemplates the exact situation present here: a situation in which the State previously sought certification, the trial court entered a transfer order, that order was then reversed by the appellate court, and now that the case has been returned to the juvenile court, the defendant is over the age of eighteen, and thus the State cannot proceed in juvenile court prior to the defendant's eighteenth birthday. *See* TEX. FAM.CODE ANN. § 54.02(j)(4)(B)(iii) (providing that juvenile court may waive jurisdiction if, in addition to other factors, court finds from preponderance of evidence that "after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because . . . a previous transfer order was reversed by an appellate court or set aside by a district court"). This subsection thus specifically addresses a situation in which the certification proceeding at issue is not the first certification proceeding that has occurred in the case. *See* TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2013) (providing that, when construing statute, courts presume that in enacting statute, legislature intended for entire statute to be effective). We therefore cannot agree with appellant that because the State initially chose to seek certification, which it had a statutory right to do, it now, after an appellate court has reversed the transfer order and appellant has passed his eighteenth birthday— two events that are outside the control of the State—can no longer seek recertification of appellant as an adult.

The juvenile court, in its findings of fact and conclusions of law, found that "the

State could not proceed in juvenile court before the 18th birthday of [appellant] because it could not have foreseen that the previous transfer order would be reversed by an appellate court after [appellant] turned eighteen"[3] and that

> [t]he State exercised due diligence throughout the pendency of this case by seeking discretionary transfer in a timely fashion before [appellant] turned 18, proceeding to a hearing before [appellant] turned 18, and by filing the 3[rd] Amended request to seek waiver of jurisdiction as soon as practicable after the Fourteenth Court of Appeals reversed the original transfer order and [appellant] returned to Harris County and appeared in this Court.

We hold that the record contains legally and factually sufficient evidence to support these findings.

### B. Whether Adjudication of Alleged Offense Had Been Made

 Section 54.02(j) also requires the juvenile court to find, before it may waive its jurisdiction, that "no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted." TEX. FAM. CODE ANN. § 54.02(j)(3). Appellant argues that it is "undisputed that J.G. was convicted and punished for the offense of aggravated robbery" because after the juvenile court initially waived jurisdiction and transferred him to the district court, he pleaded guilty to the charged offense. He asserts that this conviction, as a matter of law, means that an "adjudication" occurred

and the State cannot establish its entitlement to recertification under section 54.02(j).

 The Court of Criminal Appeals has held that a judgment is void "only in very rare situations—usually due to a lack of jurisdiction." *Nix v. State*, 65 S.W.3d 664, 668 (Tex.Crim.App.2001). A void judgment is a nullity. *Id.* at 667–68. In the absence of a valid transfer of jurisdiction from the juvenile court, the district court lacks jurisdiction to adjudicate the case and any resulting conviction is void. *See Ex parte Waggoner*, 61 S.W.3d 429, 431 (Tex.Crim.App.2001); *see also Cordary v. State*, 596 S.W.2d 889, 891 (Tex. Crim.App.1980) ("We conclude that, as appellant was never transferred from the juvenile court to the district court ... she was never made subject to the jurisdiction of the district court. The court did not have jurisdiction to accept her plea of guilty; her conviction is void."); *Grayless v. State*, 567 S.W.2d 216, 220 (Tex.Crim. App.1978) ("We hold that the district court did not have jurisdiction to try the appellant for a criminal offense in the absence of a valid waiver of jurisdiction by the juvenile court."); *Moon*, 410 S.W.3d at 378 ("Because the juvenile court abused its discretion in waiving its jurisdiction over Moon and certifying him for trial as an adult, the district court lacked jurisdiction over this case.").

Here, after the juvenile court first waived jurisdiction and transferred appellant's case to the district court, appellant

---

**3.** We note that the Court of Criminal Appeals' decision in *Moon v. State*, which provided the basis for the Fourteenth Court of Appeals to reverse appellant's prior transfer order, issued on December 10, 2014, nearly six months after appellant turned nineteen. We also note that this Court's earlier decision in *Moon*, which was ultimately upheld by the Court of Criminal Appeals, issued on July 30,

2013, more than one year after the juvenile court in this case first waived jurisdiction and just over a month after appellant turned eighteen. Appellant's argument that the State failed to use due diligence because the first transfer order used by the juvenile court in this case was "patently inadequate" under the authority of *Moon* is therefore unavailing.

pleaded guilty to the charge of aggravated robbery, and the district court accordingly entered a judgment of conviction. However, on appeal, the Fourteenth Court of Appeals held that the juvenile court abused its discretion in waiving jurisdiction and transferring the case. *J.G. I*, 471 S.W.3d at 4. The court stated, "Because the criminal district court never acquired jurisdiction over appellant, we vacate its judgment of conviction and dismiss the case in that court." *Id.* Thus, because the district court did not acquire jurisdiction over appellant, his conviction in that court is void and of no effect. *See Nix*, 65 S.W.3d at 667–68 (stating that void judgment is "a nullity"); *Ex parte Waggoner*, 61 S.W.3d at 431 (holding that in absence of valid waiver of jurisdiction from juvenile court, district court lacks jurisdiction to hear case and any resulting conviction is void). In this case, therefore, no valid adjudication concerning the alleged offense has been made.

We conclude that sufficient evidence supports the trial court's finding that no adjudication concerning the alleged offense has been made.

### C. Probable Cause that Appellant Committed Offense Alleged

■ Section 54.02(j) also requires that the juvenile court, before it may waive jurisdiction, determine that "there is probable cause to believe that the child before the court committed the offense alleged." TEX. FAM.CODE ANN. § 54.02(j)(5). Appellant argues section 54.02(j) "does not authorize a juvenile judge to transfer a person who may be criminally responsible for an offense, that is, who may be a party to an offense. Rather, the judge must find that there is probable cause that the person *committed* the alleged offense, according to the statute's plain language." Appellant thus argues that because the evidence presented at the transfer hearing reflects that appellant was not the gunman during the alleged robbery, but was only a party to the offense, the State did not establish that probable cause existed that appellant himself committed the offense.

Appellant, however, cites no authority holding that, when determining if probable cause exists that the defendant committed the alleged offense, there is a distinction between liability as the principal actor and liability under the law of parties. Appellant cites one case, the Austin Court of Appeals' decision in *In re A.F.*, 895 S.W.2d 481 (Tex.App.–Austin 1995, no pet.), for the proposition that "[a] juvenile court cannot make a finding that a juvenile used a deadly weapon during an offense unless it finds that he was the actual party using the weapon." In that case, the Austin Court held that where there was evidence that the defendant's co-actor, rather than the defendant himself, was the one who used or exhibited a deadly weapon during the offense, insufficient evidence supported the juvenile court's affirmative finding in its adjudication order that the defendant used a deadly weapon. *Id.* at 487. The Austin Court thus reformed the juvenile court's judgment to delete the affirmative deadly weapon finding. *Id.* Appellant ignores, however, that in that case—which involved the juvenile court's actually adjudicating the delinquent conduct issue, as opposed to its determining whether to waive jurisdiction and transfer the defendant to the district court—the State "tried [the defendant] only as a party to the delinquent conduct." *Id.* Thus, the Austin Court did not hold that the State could not use the law of parties during proceedings in the juvenile justice system. *See id.* ("The jury charge addressed appellant's involvement in the alleged delinquent conduct only as a party and did not provide for a finding that appellant personally used

or exhibited a deadly weapon."); *see also In re D.L.N.*, 930 S.W.2d 253, 255–57 (Tex. App.–Houston [14th Dist.] 1996, no pet.) (considering whether sufficient evidence supported juvenile court's determination that probable cause existed that defendant committed capital murder under law of parties).

As the State points out, under the law of parties, if the defendant "acted with the intent to promote or assist the commission of the offense by encouraging, aiding, or attempting to aid another person in committing the offense, he is just as criminally responsible for the offense as if he had directly committed [the offense] by his own conduct." *See Montalvo v. State*, 315 S.W.3d 588, 594 (Tex.App.–Houston [1st Dist.] 2010, no pet.); *see also* TEX. PENAL CODE ANN. § 7.01(a)–(b) (Vernon 2011) (providing that "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both" and that "[e]ach party to an offense may be charged with commission of the offense"). The State presented evidence at the transfer hearing that appellant walked up to the complainant with another man, who exhibited a firearm and demanded the complainant's property, and then fled the scene with the other man in a vehicle. An HPD officer observed appellant and his co-actor involved in a second robbery; and appellant, who was driving, crashed into an apartment complex. Officers recovered the complainant's property in the car with appellant, and the complainant positively identified appellant at the scene of the crash as being involved in the robbery. The State thus presented sufficient evidence that probable cause existed that appellant, under the law of parties, committed the alleged offense of aggravated robbery. *See In re C.C.*, 930 S.W.2d 929, 933 (Tex.App.–Austin 1996, no pet.) ("Probable cause exists where there are sufficient facts and circumstances to warrant a prudent person to believe the suspect committed the offense.").

We conclude that the State presented sufficient evidence to support each of the statutory requirements for waiving jurisdiction under section 54.02(j). We hold that the trial court, therefore, did not abuse its discretion in waiving jurisdiction and entering a second order certifying appellant as an adult and transferring him to the criminal district court.

We overrule appellant's second issue.

### Conclusion

We affirm the order of the juvenile court. All pending motions are dismissed as moot.